Good morning, your honors. My name is Rob Alperado. I'm representing Finas Glenn. May it please the court, when the Vermillion County judge issued the search warrant in this case, he must have felt some assurance that the process that he was following was going to lead to some kind of a just result in the probable cause finding, but he was mistaken in that assurance. This wasn't unusual probable cause finding because there was no affidavit. There was a hearing in his courtroom under oath by the officer who was presenting the complaint. That's not uncommon in state court. No, it's not in some counties, but what that did was it gave him, particularly where the state's attorney, Jacqueline Lacey, conducted the examination of the officer, it gave the court some assurance that she had spoken with the officer, knew the facts, knew that what she was presenting was a probable cause finding, but as we learned at the suppression hearing, the officer admitted that he didn't include a lot of detail about the informant, not only for the court, but for the state's informant he was working with. Counsel, this is Judge Easterbrook. Are you asking us to make a de novo decision about probable cause? Am I? Certainly not. The judge chatted, certainly had to give great deference to the judge's finding that there was probable cause for the search warrant. There's no question about that. And Judge Shadid did find probable cause after the suppression hearing. There was no real... Counsel, let me tell you why I'm making this argument. It's because both your brief and your oral arguments seem to be just an attempt to re-argue the issue, but as you now say, great deference is required by Illinois against Gates, and we have a situation in which both the state judge and the federal district judge found probable cause. Doesn't that make it almost impossible to require exclusion of evidence, even if we were to disagree, given U.S. against Leon? No, because when the judge issued the warrant, he didn't have all the necessary facts that were important to a probable cause finding. Now, you can say that Judge Shadid had more facts, and therefore he made a proper decision, but even he questioned the officer's credibility about how long he had worked with the informant. The officer told the issuing judge that he had worked with the informant off and on for 16 to 17 years, leading to an inference that he worked directly with him and he could vouch for the verifiability of his information, but at the with the informant, and that he only had a few dealings with the informant in the past few years. He never described those dealings during his testimony, and Judge Shadid found it to be problematic that he was not forthcoming to the issuing judge. So yes, we have to give great deference to the issuing judge's conclusion, but it was based on a flawed factual analysis from the beginning. The officer didn't tell the issuing judge anything about the informant's prior convictions. We know that he had served three prison terms, he had five felony convictions, he had numerous misdemeanor convictions, and I believe his last sentence was a 10-year sentence in 2008. So he was in prison for a long period of time in the run-up to this transaction that he did with Mr. Glenn on September 13th. Now the other problematic thing about what he failed to disclose to the issuing judge was the fact that he already had the phone number that he was seeking from this warrant. In fact, the only specific thing that he was seeking in the warrant was the telephone number of the target of his investigation, a man by the name of Daryl Johnson. But the interesting thing was that the issuing judge, when he asked the officer, well, how did your informant know that your target was the supplier of cocaine to Mr. Glenn, the police officer could not articulate what the basis of that knowledge was. And then again, at the suppression hearing, even when he must have been on notice that he would be asked a question like this, he could not articulate how his informant knew that the target was dealing with Mr. Glenn. Mr. Avalon, we have one minute to your rebuttal time. Well, let me shift real quickly to the so-called controlled buy that occurred here. The reason why all of this omitted information is highly critical to this warrant was because the controlled buy was so deficient. This court in United States v. Hanes has stated what a properly executed controlled buy consists of, and none of that occurred here. So if there are no other questions, I will turn it over to Alyssa Rya. Thank you, Your Honor. May it please the court. My name is Alyssa Rya, and I represent the United States of America. As we're all aware now, the issue here is whether the district court correctly found that Agent Albringer's testimony in support of the search warrant for Glenn's home was supported by probable cause. And the question is whether he correctly found that, where the confidential source made the controlled buy of two ounces of cocaine from Glenn's house, and where Glenn told the agent that there was a second cell phone inside his house that contained the target subject's contact information, which was the alleged drug supplier of Glenn. The government acknowledges that Albringer did not provide the court with all of the information that he had available to him at the time that he testified in support of the search warrant, but the district court didn't err in finding probable cause under the circumstances here. And that's because, number one, there was a controlled buy of two ounces of cocaine from Glenn's house. And it's our position that that controlled buy established probable cause to search Glenn's house for evidence of drug trafficking. Now, there's lots of talk in the district court that that controlled buy was properly executed. And I think that the elephant in the room, for lack of a better term, is that that buy was audio and video recording. The agent testified that the confidential source went to Glenn's house, met with Glenn at the house, and purchased cocaine from him, and that he was wearing a wire in audio and video recording the buy. So I don't think that that fact can be overlooked. Obviously, Albringer did not testify in support of the search warrant that he had, which this would be a little bit odd, but that he had previously sworn out other narcotic search warrants in front of the judge, but he did testify to that in the suppression hearing. So I think, you know, the judge understood what a controlled buy is, and the judge understood that it was audio and video recorded. And as this court has previously held, evidence of drug trafficking is likely to be found where drug or activity at a drug dealer's home, but in this case there was. And so that controlled buy, two ounces of cocaine, it's the government's position that that established that Glenn is a drug dealer. And that, coupled with the confidential source's ability to go to Glenn's house to purchase the drugs, shows that this wasn't just some one-off situation. This wasn't a one-time thing. And it also gives the agency issuing magistrate, issuing judge, a reasonable, the ability to make a reasonable inference that that confidential source of information that the target subject supplied Glenn with cocaine was first-hand information, because he could go directly to his house and buy more cocaine, two ounces of that. But in addition to the controlled buy, Glenn, on the day of the search warrant, told agents that he had two phones, and that one was at home inside his house, and that that was the phone that had the contact info for the target subject. That, the person that the confidential source said supplied Glenn with cocaine, and the person that the agents had already been investigating for cocaine trafficking. And Aldinger told the judge, as he was swearing out the search warrant, that in his training and experience, drug dealers have multiple phones. So not only was there probable cause for evidence of drug trafficking based on the fact that Glenn's a drug dealer and this is his house, there's probable cause to get the phone containing that target subject's contact information. And Mr. Alvarado stated that the agents already had the phone number that they were seeking in the warrant, but that's just incorrect. They had a previous phone number, and they didn't have, they had a previous phone number for the target subject. They didn't have the current phone number, at least the CS didn't have the current phone number for the target subject. And in their training and experience, or in So they were looking for another phone that could, as the agent described during the suppression hearing, lay out the roadmap of the target subject's drug trafficking network. So agents knew that Glenn was a drug dealer after conducting that controlled buy. This court previously held that drug dealing is commonly, evidence of drug dealing, excuse me, is found where drug dealers live. And because the agents were investigating that target subject for drug trafficking, the buy and the presence of that second phone, under the totality of the circumstances, all of those things established probable cause here. Now, yes, Alwinder didn't provide the judge information about the confidential sources motive or his criminal history. He was unclear about his personal experience with the CS. And these facts are important, but they were immaterial to the probable cause analysis here, because those aren't the only types of evidence or information that can bear on an informant's reliability. Corroboration is also something that bears on reliability, and that's what this case has, is corroboration of the CS through the recorded audio and video, recorded, controlled buy, out of Glenn's house and Glenn's statement that he had a second phone. So it's our position that those two things corroborated the confidential sources information originally that the target subject was supplying Glenn with cocaine and that Glenn was dealing cocaine. So ideally, we would like all of that information bearing on a reliability in the testimony or in the affidavit, but it's our position that probable cause survives here, because the result would not have been different had that info been included, because the result would still be based on this controlled buy and Glenn's statement. So the sleight of hand comments that the district court made in regards to Alwinder's testimony about how long he had known the CS, it's our position that, one, Alwinder didn't intend to mislead the judge, either judge that he was appearing in front of. I mean, he put himself in person in front of the issuing magistrate available to ask questions, so it would be pretty dangerous for him to put himself in that situation and intentionally lie to the judge. But on top of that, there's really no difference between whether VMAG, the Vermilion County Metropolitan Enforcement Group, or Alwinder himself had a personal experience with the CS. In this case, it was whether it was Alwinder or the other agents with VMAG, what they were telling the judge, what Alwinder was telling the judge is that we have personal experience, or I have personal experience with the CS, and that we've found him reliable in the past. And they didn't even give any specific instances. It was just a statement about reliability. So we think that the district court's side of hand comment was, we don't think that the district court was implying that Alwinder acted in bad faith, but rather that this is the type of situation that could cause a problem. And in this case, it didn't, because Alwinder wouldn't really gain anything by being the one that had the personal experience with the CS as opposed to anybody else at VMAG. And we see this comment more as Judge Shadid generally advocating for potential issue as opposed to stating that Alwinder did something specifically wrong in this case. So it's our position that even if, it's our position that probable cause survives in this case, but even if this court were to find that the search warrant lacked sufficient probable cause, or that the district court erred, we believe that Alwinder acted in good faith. We think that this is not, this wasn't a bare bones conclusory search warrant. It certainly could have included more information, but it was, the testimony was such that a reasonable officer could rely on the judge's issuance of this search warrant. And then that's because the probable cause is based on that controlled by and the statement by Glenn himself. It's also our position that Alwinder, as I stated, was not reckless or dishonest, and that that was not his finding one way or the other. It appears on good faith because the district court found for probable cause. So it's our position that the district court was correct, that the district court did not err, that if this court does find otherwise, that Alwinder acted in good faith. And unless there are any further questions, the government will rely on this brief. Thank you. Mr. Alvarado, you have three minutes for rebuttal. Your honors, just a word about the transaction on September 13th. What's important about what was left out of that transaction in the testimony before the issuing judge is any evidence that this wasn't a one-off transaction. There was no mention about the informant setting up the transaction or that the transactions had been done previously by the informant. And more significantly, after the transaction was done, there was no statement from the informant as to what occurred at the residence. In fact, there's no evidence that he was actually inside the residence to see any other cocaine, to arrange any other transactions, to notice anything else that would give any indication that there was ongoing criminal activity at the residence so that more cocaine might be found at a later time to justify the search warrant. That's the only comment I want to make in rebuttal. And thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.